Good morning and may it please the court. My name is Jennifer Cervantes and I represent the petitioner Marcio Lopez and his petition for review before this court based on the denial of his asylum claim. Your Honors, there should be no factual disputes in this case. The immigration judge who had the opportunity to observe Mr. Lopez's demeanor in both a live cross and direct examination found him to be credible. Further, the immigration judge noted that his testimony was detailed, plausible, and consistent with the asylum application and with known country conditions and that he was sincere, forthright, and truthful. Ma'am, I'm a little hard of hearing. Could you slow up a little bit? Yes, yes, Your Honor. Your Honors, the government had the ability to attack Mr. Lopez's credibility during the immigration hearing and they said they did not take any issue with it. So today, based on those findings, the narrative of this case should be analyzed upon Mr. Lopez's undisputed testimony. If we agree with you on the issue of past persecution, do we need to send this back to the IJ on the issue of, excuse me, to the BIA on the issue of Nexus? No, Your Honor. In Hernandez-Diablos, in a footnote, this court ruled that it was entitled to review a claim that was brought by the petitioner and that the Board of Immigration Appeals was presented with but didn't rule upon. But that's the unusual case, isn't it? What makes this case unusual that it should be decided on both issues on appeal? Your Honor, the Board of Immigration Appeals was given the opportunity to but was not to. And in particular, because past death threat has been so established by this court, the Board of Immigration Appeals should have ruled on that because they should have overturned the immigration judge's finding that there was no past persecution. There's been a plethora of Fourth Circuit cases, which I can go into if you would like. No, that's okay. Thank you. Well, if we conclude that there was past persecution, doesn't that change the burden of proving whether relocation is possible? Yes, Your Honor. And shouldn't it be remanded for that? Your Honor, our position is that even if the burden hadn't been inappropriately placed on Mr. Lopez, that he met this burden. But the burden is on the government to prove that he can be relocated once you prove persecution, right? Yes, Your Honor. The government does offer statements showing... But that wasn't considered by the immigration judge. I think that the immigration judge does discuss... But not after the burden was shifted. Yes, Your Honor, that's correct. He didn't consider with the right burden proof if we find past persecution. I would just say that the government... Perhaps, Your Honor, that it should be remanded based on that. But I do think that this court has the ability to review the record in total to determine that there was... Even that the government failed to rebut that evidence. And both lower courts should have known the burden. It's not a new burden for this court. But if the burden of proof is improperly assigned in a case, we usually send it back for application of the proper burden, don't we? Yes, Your Honor. Would Your Honors like me to go into analysis of the past persecution? Or is that something that you think I should move directly to Nexus? Or do you want to hear about Nexus? We'll leave it to you. Okay. Well, I'll just briefly state that I think that past persecution has been... Since 2005, this court has repeatedly held that a targeted death threat does constitute persecution as a matter of law for the purposes of meeting the first element of asylum. And that the immigration judge and the Board of Immigration... The BIA has failed repeatedly to acknowledge this. In Crespen-Valderez, this court found that Crespen had suffered from past persecution when Crespen received two written death threats in his home and one verbal death threat when he was driving in his car by members of MS-13. Mr. Lopez, in this case, testified that the Hernandez family, which is a large family known for committing murders, threatened and tried to kill him. Once, two armed members of the Hernandez family asked Mr. Lopez if he was seeking revenge for his father's death. And when he answered no, they still said, we're still planning to kill you while they were armed. And then a few weeks later, they attempt to kill him while they yell at him and shoot directly at him. These instances alone constitute past persecution. This court has held that repeatedly. But to go even further, in Barajon-Beholder, this court held that violence or threats to one's close relatives is an important factor in deciding whether mistreatment sinks to the level of persecution. In Barajon, this court stated that the possibility that the threat of disappearance would come true was made all the more likely by the uncle's own disappearance and any inference that the police's threat that Barajon would be disappeared was idle chatter, which is a reasonable fact finder could then ignore, should have been eliminated by the fact that the threatened conduct actually happened to Barajon's uncle. In Mr. Lopez's case, the maiming of Mr. Lopez's uncle and the murder of Mr. Lopez's father are relevant factors that should have been considered by both the immigration judge and the Board of Immigration Appeals. Any inference that the Hernandez brothers' threats were idle chatter should have been eliminated by the fact that the threatened conduct actually happened to Mr. Lopez's father. Based on this and a plethora of other decisions by this court, the immigration judge and the Board of Immigration Appeals committed legal error when finding that Mr. Lopez testified credibly. They found that he had not suffered past persecution. No reasonable adjudicator could have reached that conclusion, and so the record compels that the finding that Mr. Lopez has met his burden in establishing the first prong of persecution. Okay, but you agree that the BIA did assume nexus, right? On page two of its opinion? Yes, Your Honor. They did, I think, assume without concluding. Yeah. That they did. But again, the board is, this court has said that it's entitled to review all of the issues when the Board of Immigration Appeals was given those issues, and they were in Mr. Lopez's briefs throughout the entire, throughout this entire time. And I'll go ahead and address the burden-shifting analysis. So when the immigration judge and the BIA committed legal error in not finding that Mr. Lopez had established that he suffered from past persecution, they also incorrectly, as you've noted, shifted the burden to Mr. Lopez to show that he could not reasonably relocate to somewhere in Honduras. Because Mr. Lopez established that he suffered past persecution, he was entitled to that presumption of a well-founded fear of persecution. The government did not rebut this presumption. Mr. Lopez was required only to show that there was a reasonable possibility, not a likelihood of future persecution. Because Mr. Lopez was found credible and because it's a reasonable possibility, which has been determined to mean as low as a 10% chance that Mr. Lopez will again be targeted by the Hernandez family, particularly when they've gone after other male members in his family, the immigration judge's decision that Mr. Lopez failed to demonstrate a well-founded fear of future persecution was manifestly contrary to law. The factors that the court should have looked at, even if they didn't shift the burden, was whether or not the applicant would face other serious harm in the place of suggested relocation, any ongoing civil strife within the country, administrative, economic, or judicial infrastructure, geographical limitations, and social and cultural constraints. Mr. Lopez testified that he did not feel safe in any of the cities he tried to relocate to. He was held at knife point multiple times and robbed in one city. The country conditions report that was submitted as evidence, including the State Department's warning, showed that Honduras continues to be unstable, that it has one of the highest murder rates in the entire world, and criminal activity is extremely prevalent. And further, the government does not have the resources it needs to punish or prosecute these cases, and the judicial system is completely riddled with corruption. The immigration judge and Board of Immigration Appeals also incorrectly looked at whether Mr. Lopez's family members had been able to safely relocate. In Crespin, this court stated, nor does the fact that Crespin's children remain unharmed in El Salvador, while he first visited the U.S., undermine the reasonableness of Crespin's own fear of persecution, for Crespin's fear is premised on threats directed at him personally. Further, the I.J. noted that Mr. Lopez's brother was able to safely relocate. However, this is contrary to Mr. Lopez's testimony, which stated that his brother fears for his safety and can only go to work and to home and back and forth and nowhere else because he's fearful that the Hernandez family will find him. In Esajuvi, Gonzales, this court found that internal relocation is not reasonable when the asylum applicant is in hiding, constantly fearing for his life. Also, Mr. Lopez testified and the I.J. acknowledged that Mr. Lopez may have different problems than the women in his family. And although it was improper for the I.J. to require Mr. Lopez to show that internal relocation was not reasonable, Mr. Lopez, in fact, did meet this burden anyway. So if it's proper, this court could consider that that burden, regardless that it should not have been shifted, was already met, and it's a much higher burden. So it was already met by Mr. Lopez, in which case it would sort of be a waste of the court's resources to remand it just to discuss a lower burden. The second issue before this court today, assuming that you do not choose to remand this, is whether or not suffering, at least on that account, is whether or not the suffering that Mr. Lopez faced was on account of a particular social group, namely his family in this case. We argue that the immigration- They pretty much picked on everybody in his family, didn't they? Yes, Your Honor, they did. They killed his father. Every single- They amputated the arms of another one. And then what happened to Margarito? Something terrible too? They- Left him in a wheelchair, shot him? Yes, Your Honor. So what- That's pretty good evidence. Yes, Your Honor, and we hold that there's plenty of evidence that there is an animus towards the entire family. But even if the board weren't- or even if this court weren't to find that, Mr. Lopez was targeted specifically on account- because of the relationship with his father and perhaps the relationship with his uncle. But again, that nexus determination is factual. And the opinion you're citing too in the footnote says we can resolve these issues when they present issues of law. But we never said we can resolve factual issues. Are you suggesting to us that we can resolve factual issues such as the nexus determination when there's no legal component to the analysis? I'm suggesting that there was the Board of Immigration- the immigration judge in particular actually committed legal error, which is reviewable by this court, and factual error. The factual error, I think, is so- I don't think there's any way that a reasonable adjudicator could have reached that. And I'll speak briefly to that. You're saying as a matter of law- Yes, yes, Your Honor. The conclusion is compelled based on these facts. Yes, Your Honor. But we can't- you're not saying we need to find facts. We don't do that. No, Your Honor. What I'm asking you to do is find that the immigration judge who reviewed all of the facts made a factual error and then made a legal error. The factual error being based on the fact that he said that he found two reasons for Mr. Lopez's persecution. One, that there was a land dispute. And two, that the Hernandez family sought to harm Mr. Lopez because they thought he wanted to take revenge for his father's death. In the first instance, the land dispute issue, that's- no reasonable adjudicator could find that that determination should have been made. There's nowhere in the record that states that Mr. Lopez or any evidence that Mr. Lopez has a land dispute with anyone. Okay, but the BIA never made that finding. It's the IJ who made that finding. Yes, Your Honor. That is correct. So your position is on these factual questions, that to the extent there is one, they were so far off base that no reasonable adjudicator could reach that conclusion. Yes, Your Honor. Therefore, we can reverse that. Yes, Your Honor. But even if there was a land dispute at issue with Mr. Lopez, which is the actual standard that should be looked at, not what Mr. Lopez's uncle was fighting about with the Hernandez family. And this court ruled that in- recently, actually, and I think it's Saris Salgado Sosa, that the analysis needs to be based on the applicant himself and not his family. And it's okay that the family's position is not a protected- like their reason for persecution is not a protected ground. But in this case, Mr. Lopez's- the reason that his persecution is based on a protected ground is due to his family relationship. Even though if you were to overturn the factual determination that there was a land dispute, as you know, the reason for persecution only has to be one central reason. And the immigration judge specifically says that one of the reasons was that Mr. Lopez- the Hernandez family was afraid that Mr. Lopez was going to try to avenge his father's death. Mr. Lopez would not be trying to avenge his father's death, although there's no evidence that he was actually trying to do that. But even if there were, he wouldn't be trying to avenge his father's death or they wouldn't be worried about that if he wasn't related to his father. And Mr. Lopez testifies to that, that the Hernandez family is worried that as the eldest male in his family, he might seek revenge based on the killing of his father or even the maiming of his uncle. So to the extent that the nexus- while we would definitely argue that this court has jurisdiction to overturn the factual determination, that there is absolutely no way a rational fact finder could have found that Mr. Lopez was in any way in dispute with any type of land issue with the Hernandez family. We also would say that the immigration judge committed legal error when it explicitly states that one of the reasons was because the Hernandez family sought to harm or kill Mr. Lopez because he might try to seek revenge for his father's death. It's the relationship to his father that is at issue here. And that is similar to Hernandez-Avalos where this court held that a mother who was threatened by MS-13 for not allowing her son to join their gang had suffered past persecution on account of her relationship to her family and it was on account of being the mother of her son. While this court found that one reason MS-13 threatened Hernandez-Avalos was because of gang recruitment, it also held that an asylum applicant need not show that his family ties provide the central reason or even a dominant central reason for this persecution. Let me just ask you a question about withholding before we run out of time. Do you agree that if, is it correct that if we agree with you on the one central reason being part of his family relationship that it needs to go back for the immigration judge or at least the board to determine whether withholding or removal is proper? Yes, your honor. And you agree also that you really don't have any evidence that this is government-sponsored torture? Or that the government won't protect him, so regardless... Do you think you have any evidence on that in this case? That the government has failed to protect him? That somehow the government is tolerating this in some way forbidden by CAT? I think if the entire record is considered, including the country conditions report, that there's quite a bit of evidence of land disputes, that the government is not only not prosecuting those types of cases, the murder for them, but they're also very involved and possibly part of the problem with the land disputes and they're intertwined. Well, possibly is not enough, is it? Yes, your honor. Either way, though, that this court decides remand is proper because the third prong of asylum has not been established at all. If there's no further questions. Thank you very much. Thank you. Appreciate it. Mr. Stalzer? Good to have you here, sir. Good morning, your honors. Counsel and may it please the court, Rob Stalzer on behalf of the AG. Your honors, the evidence here does not compel the conclusion that Petitioner, Petitioner himself, was specifically harmed sufficiently severe to constitute persecution. Okay, but wait a minute. How can you say that? This isn't just a death threat case. They shot at him as he was trying to escape from them. He had to crawl under a barbed wire and why don't we consider the fact he was shot at in addition to the death threat? We absolutely have to consider Petitioner was, Petitioner suffered two instances of threats, physical threat, the shooting, the chase, and the verbal threat when they told him, hey, they want to come after you because they thought he had killed, there was the mistaken identity. They thought that he was going to seek revenge. So he had a physical threat and a verbal threat. And that was all of the harm that Petitioner himself suffered. Now, Petitioner wraps in and he should certainly be considered the harms to the other family members, which occurred over the course of a decade. But he was not present for any of those harms. When it came to him specifically. So they can't be taken into account? What's your point? Well, I think under the court's precedent, they should be considered. But we have to look in terms of the severity of harm to Petitioner himself. Asylum is a personal application. He can't simply apply for asylum on behalf of his entire family. He has to say that he in particular either suffered past persecution or will suffer or has a well-founded fear of suffering future persecution. And in his case, he only had these two physical, one physical threat and one verbal threat. That by the way, we can look and see how severe he thought they were. The first time he didn't even think it was severe enough to go to the police. He thought they were drunk. Right. But he's saying I am being persecuted. He is being persecuted because of his membership in his family. Okay. So the evidence of what happened to his father being shot in the head and his uncle having his arms amputated with the machete and the other one being put in a wheelchair has to be probative evidence of his persecution for being a member of that family. When I say his, I mean the Petitioner. Why isn't that probative evidence? That evidence I think goes to nexus, which in this case the board assumed. Right. That's not a live issue in this case. What we care about here isn't nexus, whether they were coming after him and the family. What we care about here is whether the harm he suffered was sufficiently severe to meet the legal definition of persecution. Right. But don't you, when you're looking at the nature of the threats that he endured or that were visited upon him, why can't you consider what else happened? Not in terms of nexus that it happened because of his family, but that this really is persecution. Look at what's been happening to this family. I mean, and this guy got a death threat, and he was shot at, and moreover his father was shot in the head and killed, and moreover the uncles were disabled. So while it's not nexus, strictly speaking, it shows that this death threat was not an idle threat, and shooting at him was not an idle act, because in the context of the family relationship apart from nexus, it's pretty darn serious. I think it's serious, and that's actually the line drawing that's going on here. Persecution is a severe concept. It has to be systematic. It has to be severe. It has to be extreme. These are the words we usually talk about when we talk about persecution, and in Petitioner's case, he's only got the two threats. He doesn't have the other hallmarks that we usually find in persecution cases like imprisonment, unjust imprisonment, or physical harm. Nobody put him in the hospital. He was able to evade this harm, and the first occasion, he thought they were drunk. He didn't think it was that serious the first time. The second time, at that time, he said, okay, I believe this is serious now, and he went to the police, but he couldn't remember even if he went to the police the next day or the day after that, and then he ultimately didn't avail himself of the police, because they said they were too busy for him that first day, come back later. Those are indicia that this wasn't the type of severe harm we ordinarily see in the persecution case. I would contrast it with the treatment that his other family members received. If you've had your arms cut off with a machete, that's a whole level of severity different than he was confronted in the street and he ran away. Those are two different things. And it gets back to my point. Why isn't that probative evidence that these threats were serious? In other words, look what they did to all the others. Right. I'm not saying the threats aren't serious. I'm saying the harm to him wasn't severe. Well, just because they missed him doesn't mean he wasn't persecuted. Well. I mean, they shot at him. They did. He was confronted with physical threats. Did they require to hit him before it becomes persecution? No. Did they require to cut his arms off before it becomes persecution? No, it is a line drawing, though. There has to be a level. Let me put it this way. On the first day when he only had a verbal threat, is that persecution? It doesn't seem like the sort of things we talk about persecution. Okay. The second encounter, they shot at him, but they missed him and he ran away. And he didn't think it was severe enough to report to the police until a day later. At some point, we have to say, okay, this is below the line of persecution and this is above the line of persecution. And in this case, that is a judgment call for the fact finder here. And in that case, you should defer to the fact finder because the evidence doesn't help. Under this court's excellent decision in Turks and V. Holder, isn't the conclusion, whether it's persecution, a legal question as opposed to a factual one? The factual one is what happened and what would happen to him. The legal one is the one for us to look at. Right. And I think that's a mixed question because it is so inherently factual. And I think that's still good law in the circuit is that it's such an inherently factual question as to what the harm to him was. And here, the immigration judge and the board looked at this and said, the harm to him is just not sufficiently severe enough to constitute persecution. And as a result, he couldn't demonstrate that he was persecuted in the past. That's what then, of course, brought the board and the immigration judge to the next question where they assumed nexus. They said, okay, we assume that they're attacking you because they're targeting you because you're a member of your family. But you could reasonably internally relocate. Well, are you saying that a petitioner has to suffer an actual injury then in order for there to be past persecution? No, Your Honor. That would be contrary to our case law, right? Yes, Your Honor. You seem to be saying that. You seem to be saying that. No, he doesn't have to be physically harmed. He can be threatened if the threats are of such severity that they rise to the level of persecution. And in this case, we simply say they don't. But the threat appears fairly serious when they follow it by shooting at you, right? I can't deny it's serious, Your Honor, but not severe. That's the board's position in this. Well, if they hit him, they probably killed him. I don't know. They didn't. One shot might do the job. So it's the fortuitous fact that they were not a good shot. I don't know if they were a good shot or not. What if they weren't actually trying to hit him? I don't know. That's not fact in the case. That's all just kind of speculation. What we do know is that Petitioner was able to avoid harm. He was able to relocate within the country safely. So were his sisters. So he could dodge the bullets and relocate. Yes, and the reason for that, Your Honor, is because asylum is for people who can't run away, right? Asylum is for people who have to come to this country because they simply cannot avail themselves of safety in their own country. Petitioner was able to run away. He got away, and he, in fact, relocated safely within his own country. Now, he didn't like the relocation. He didn't like where he went. He was making less money because he was a carpenter, and then he had to work on a coffee plantation. But he was, in fact, able to avoid the harm that he wanted to avoid. I'm sorry. Go ahead. No, Your Honor. How do you respond to Ms. Sorante's point that even though the BIA assumed the nexus determination that we can decide it because no reasonable fact finder could have concluded otherwise, in other words, that he was targeted on account of his family relationship? Well, I think that's another factual question. Well, it is a factual question. She's conceding it. But she's saying when the facts are such, and they are so egregious, that as a matter of law, the court is compelled to find it, that we can deal with it even though ordinarily we would not. Do you think that that's a viable principle to stand on? I don't think it's a good theory simply because under Chenery, I can't argue to you any alternatives for the board decision, alternative basis on which to uphold the board's decision or to dismiss this case. So it's not like I could come in and say, hey, well, forget about this other dispositive issue, the relocation, whatever. Let's talk about nexus. I couldn't do that, so I don't know that we can do the flip side here, where I'd have to try and make a decision for the board that it didn't, or concede an issue that the board didn't concede. The board's simply saying we don't need to reach nexus, and there is case law saying the board doesn't have to address issues if they're not dispositive. In this case, we have the dispositive finding with respect to past persecution, and then also with respect to relocation, reasonable relocation. I did want to mention- They didn't look at the relocation issue. If she's right about persecution, then the burden of showing the availability of possible relocation shifts to the government, right? And that's not how they looked at it below. It is, but I'm not sure that gets Petitioner as far as he thinks it does. And I say that for this reason. The burden of proof here is preponderance of the evidence, which means that where the evidence is in equipoise, the party with the burden loses. So in a case like this, where- And I know my sister counsel has a different idea about this, but I think the evidence is very clear he's able to reasonably relocate. And the board made that finding, not just that he didn't meet his burden, but that the board specifically said, we affirm the determination that internal relocation is a reasonable alternative. That's a factual finding, and it's one I think that is supported by the evidence here. Well, but the immigration judge didn't do that burden-shifting analysis. Right, right. My point is, though, that where that is, it would be futile almost to remand on a situation where that burden analysis isn't going to change the outcome. Here, because it is so clear that he could relocate- You're arguing harmless error? Not harmless error. I think actually Chenery referred to it as idle and useless formality. If we were to say- Yeah, it's a little harsh. If we were to say that the internal relocation finding is supported by substantial evidence, there would be no reason to send it back to the board, or potentially the immigration judge, for them to say, okay, well, I have the exact same evidence on internal relocation. I still find it reasonable, and therefore the government in that case has met its burden. It's only when the evidence is in equipoise that the burden is actually going to make a difference, which means remaining in any other circumstance would be futile. I think is my answer to that question. Well, one person's idle, useless formalities and another person's due process. I hadn't considered a due process analysis. No, I'm just- So, does the case- Is there any evidence that this is government-sponsored torture or government-tolerated torture? Oh, no, Your Honor. I did want to- I'm glad you brought that up. Yeah, the evidence just doesn't support a torture claim here on either prong, not the likelihood of torture, and then also really not the likelihood of government involvement. The one time he did actually go to the government for help, the police officer said, yeah, I'll help you, but you've got to come back tomorrow. That's maybe equivocal help, but that's enough to say that at least when he actually needed help, he was able to- or at least thought he was able to seek out somebody, which, as far as the torture claim goes, it won't go beyond that point. Your Honors, I won't belabor the point. I think our briefs lay out these issues. If you have any other questions, thank you for your time. Thank you very much, sir. Appreciate it. Ms. Cervantes? Thank you, Your Honors. Your Honors, the government has restated time and time again the wrong standard for past persecution. Crespin V. Valderez says the threat of death qualifies as persecution. It doesn't say that the harm doesn't have to be severe enough. It doesn't say that there has to be a physical injury. We're here today because the Hernandez family did not complete their mission of killing Mr. Lopez. Just the threat is sufficient for this court to find past persecution. This court has found in other cases, such as a recent case of Olato Feliciano v. Sessions, that just handwritten notes and a phone call were sufficient. When the petitioner never even came into contact with the gang members that were threatening her, that was a sufficient finding of persecution. So the government is using the completely wrong standard, which they have repeatedly done and forced asylum applicants to continue to appeal these cases. Also, the government incorrectly states that Mr. Lopez didn't like his relocation options because of pay. In a direct examination, Mr. Lopez just merely said that he was making less money. He didn't say that it was a problem. He didn't say that he couldn't afford his lifestyle. He just said he was making less money. There's nowhere in the record that states that that's the reason that he decided to move. In fact, he states- He didn't have any problem with the Hernandez family when he was in his new place, was he? There's no evidence of that. There is no evidence of that, Your Honor. However, Mr. Lopez stated that he was worried that quite a few people from his hometown were traveling to and from those cities, and they might tip the Hernandez family off to him. And that's what he was concerned about. And so he was only going to work and going home, and that was it. And this court has held that hiding, not being able to go anywhere and do anything, is not sufficient to establish that relocation was reasonable. In regards to- I'd just like to say in regards to the question about government-related torture for the CAT standard, while the government was not the actor in this regard, in this case, the government was complicit. Several times throughout Mr. Lopez and his family's persecution, they go to the police, and the police do nothing. For example, Mr. Lopez's mother goes to the police when her husband is shot and killed, and the police do nothing. When Mr. Hernandez goes to the police, when he- and so he has a fear, just like- and as is noted in the Country Conditions Report repeatedly, people have a fear to go because of retribution that the government can't control. But when Mr. Lopez does go to the police- if I might finish my point, Your Honors, I see that my time's up. When he does go to the police, they tell him, oh, sorry, this is an actual emergency, and I come back later tomorrow. And that was on the threat of death of his life. So the government- and there's other examples, but the government was definitely complicit in this family's torture and persecution. Thank you, Your Honors. Thank you very much. We'll come down and re-counsel, and then we'll take up the final case.
judges: Robert B. King, Barbara Milano Keenan, John A. Gibney Jr.